UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

VALLEY X-RAY CO. a Michigan
co-partnership,

    Debtor.

_____/

MARK H. SHAPIRO, Chapter 7 Trustee of
VALLEY X-RAY CO.,

    Plaintiff/Appellant,

                                                 Civil No. 06-12463
                                                 Hon. John Feikens

    v.

VPA, P.C., a Michigan professional
corporation,

    Defendant/Appellee.

_____/

**OPINION AND ORDER AFFIRMING GRANT OF SUMMARY JUDGMENT**

    The Chapter 7 Trustee of Valley X-Ray Company (Appellant)[1] commenced an adversarial proceeding against VPA, P.C. (Appellee), seeking to force Appellee to disgorge money it obtained through a transaction Appellant claims was a fraudulent conveyance. Bankruptcy Judge Tucker granted summary judgment for Appellee, finding that Appellee was not a party that could be forced to disgorge money in this matter. Appellant appeals this ruling. I hereby AFFIRM Bankruptcy Judge Tucker's decision.

---

[1] I will use "Appellant" to identify the Chapter 7 Trustee who is the party to this litigation, and "Debtor" to identify Valley X-Ray itself.

I.      **FACTUAL BACKGROUND**

Valley X-Ray Company ("Debtor") was in the business of providing medical services, including mobile x-ray services, at nursing homes. (Appellant Br. 4, Appellee Br. 1.) By early 2001, Debtor was under investigation by the federal government for Medicare fraud and violations of the False Claims Act. (App. Record No. 6 Settlement Agreement at 1.)[2] In resolution of this investigation, Debtor entered into a Settlement Agreement where it agreed to pay more than $1,000,000.00 to the United States and to be permanently excluded from participation in any federal health care program. (Id. at 3.) After agreeing to these conditions, the latter of which essentially put Debtor out of business because it could no longer be reimbursed for any services to Medicare or Medicaid patients, Debtor decided to sell its business. (Appellant Br. 4.)

Debtor first tried to sell its assets to Diversified Medical Group (Diversified). Those parties entered into a purchase agreement on June 1, 2000 in which Diversified would purchase Debtor's assets. (App. Record No. 6 Aff. of Douglas Ward ¶ 3.) Diversified did not purchase Debtor's assets, however, apparently terminating its right to do so sometime in December of 2000. (Id. at ¶ 4.) Debtor then entered into a letter agreement to sell these assets with Appellee on April 9, 2001. (Appellant Br. Ex. A.) In this agreement, Appellee agreed to purchase substantially all of Debtor's assets, and to pay at closing $10,000 to the Debtor as well as various liabilities for the Debtor. (Id.) Appellee had the right under the agreement to refuse to

---

[2] Citations to the Appellate Record are to documents indicated on Appellant's Amended Designation of Items to be Included on Record on Appeal unless otherwise noted. Also, citations to exhibits attached to Appellate Record No. 6 are indicated by the title of the exhibit due to an inconsistency in labeling.

consummate the sale for any reason without incurring any liability so long as it did so within 90 days of signing the letter agreement.  (Id. at ¶ 2.) The agreement also included a provision that prohibited assignment of any rights under the agreement without prior written consent of the other party.  (Id. at ¶ 11.)

At some point after entering the letter agreement and before the 90 day period expired, Appellee decided it did not want to purchase the assets of Debtor.  It was concerned that Debtor had too many liabilities, particularly in light of the recent settlement with the United States. (App. Record No. 10 Ex. 1 at 4:15 - 6:12.)  However, Appellee was approached by Diversified who was again interested in purchasing Debtor's assets.  Diversified was concerned, however, that due to the bad blood that existed between itself and Debtor that it would not be able to make the purchase if Debtor knew Diversified was the entity purchasing its assets.  (Id. Ex. 1 at 8:7-13.)  For each other's mutual benefit, Appellee and Diversified formed Valley Medical Services, LLC ("LLC") on June 25, 2001.  (App. Record No. 6 Creation of LLC form.)  Appellee and Diversified were the sole members of LLC, which had as its initial capital contributions cash from Diversified and the rights under the letter agreement with Debtor from Appellee.  (See App. Record No. 4 Ex. E Art. I § 9; App. Record No. 10 Ex. 4 ¶ 13.)  LLC at that time also assumed all of Appellee's obligations to Debtor under the letter agreement.  (App. Record No. 4 Ex. E.) The members of LLC signed an Operating Agreement for the entity on June 29, 2001.  (Id.) This Operating Agreement indicated that Appellee had a 51% interest in LLC, and Diversified had a 49% interest.  (Id. at Schedule A.)  Two hundred dollars was the capital divided between them.  (Id.)  The Operating Agreement also contemplated that Diversified would buy Appellee's share in LLC from Appellee after the closing of the purchase of Debtor's assets.  (App. Record

3

No. 4 Ex. E Art. I § 9.)

On June 29, 2001, the same date as the signing of LLC's Operating Agreement, Diversified put $150,000, the amount for which it was purchasing Appellee's share in LLC, in escrow pending purchase of Debtor's assets. (Id. at Ex. E, Ex. 1.)[3]  On July 1, 2001, LLC purchased the membership interest Appellee held in it, leaving Diversified as the sole owner of LLC. (Id. at Ex. D.)

On July 2, 2001, Debtor and LLC completed a bill of sale for Debtor's assets. (Appellant Br. Ex. B.)  This sale closed in accordance with the letter agreement between Debtor and Appellee signed April 9. (Id.)  Mark Mitchell, the Executive Director of Appellee who signed the April 9 letter agreement with Debtor on behalf of Appellee, acted as the manager of LLC at the closing. (App. Record No. 10 Ex. 1 at 11:17-22.)  Representatives of Diversified were present in the building while the bill of sale was being completed, but they were in the room next door to the signing instead of directly encountering Debtor. (Id. at Ex. 1 9:25 - 10:12.)  All monies paid by LLC to Debtor were provided by Diversified. (Id. at Ex. 4 at ¶ 13.)  On July 3, 2001, LLC was merged into Diversified. (App. Record No. 6 Certificate of Merger.)  Diversified had paid in total $725,305.36 to obtain Debtor's assets, and Debtor received $10,000 cash and had a debt of $140,000 to professionals paid. (Id. at Ex. I.)  The remaining $575,305.36 of this money was $425,305.36 paid to Carol Levine as a buyout of her employment contract with Debtor along with an employment bonus, and $150,000 paid to Appellee to purchase its rights in LLC. (Appellant Br. Ex. 1 ¶ 9; App. Record. No. 6 "Valley X-Ray Company - Linking the Transactions.")  Diversified considered the total amount paid for this transaction to be the

---

[3]Exhibit 1 is part of the document attached as Exhibit E to Appellate Record No. 4.

4

purchase price for the assets it obtained. (App. Record No. 6 Aff. of Douglas Ward ¶ 9.)

Debtor was served with an involuntary bankruptcy petition on April 23, 2002. (Appellee Br. 4.) The present adversary proceeding commenced on September 21, 2004. Appellee filed its motion for summary judgment on July 7, 2005. After this motion was filed, Appellant was given permission to file an amended complaint and did so. This amended complaint contained two counts against Appellee: (1) "Recovery of fraudulent conveyance pursuant to Mich. Comp. Laws § 566.35," and (2) "Recovery of fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)." (Amended Compl. filed Dec. 2, 2005.) Appellee's motion for summary judgment was granted on these two counts May 24, 2006. Appellant filed its notice of appeal May 31, 2006.

## II.     JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear an appeal of a grant of summary judgment from a bankruptcy court in this District under 28 U.S.C. § 158(a)(1). A District court reviews an appeal of summary judgment granted by a Bankruptcy Court *de novo*. In re Battie, 995 F.2d 85, 89 (6th Cir. 1993); see also Vinson v. Dakmak, 347 B.R. 620, 621-22 (E.D. Mich. 2006) (Edmunds, J.). Because this Court has determined that oral argument would not "significantly aid[]" its decision in this matter, no oral argument is necessary. See Fed. R. Bankr. P. 8012(3).

## III.    ANALYSIS

I address first the claim made by the Appellant that it should be able to recover from Appellee under the applicable provisions in federal bankruptcy law, see 11 U.S.C. § 550, and then the claim that it should be able to recover from Appellee under Michigan law, Mich. Comp. Laws § 566.38. As Appellee is not a party from whom Appellant can recover under either of those laws, I affirm the decision of the court below.

1. <u>Claim under Federal Bankruptcy Law</u>

I AFFIRM Bankruptcy Judge Tucker's grant of summary judgment on the federal claim raised by the Appellant. Recovery can only be had for a fraudulent conveyance under the U.S. Bankruptcy Code from (1) "the initial transferee of such transfer," (2) "the entity for whose benefit such transfer was made," or (3) "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1) & (a)(2). No other recovery is possible. See <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993) (applying principle of *expressio unius est exclusio alterius*). The transfer at issue must be of an interest of the debtor for this provision to apply. <u>See, e.g.</u>, <u>In re Faulk</u>, 281 B.R. 15, 18 (Bankr. W.D. Okla. 2002). Because there is no dispute of material fact that Appellee does not fit within any of these categories, Appellant cannot recover from it and summary judgment is proper.

  *i. Appellee was not the Initial Transferee of the Transfer*

Because the sale at issue in this case was between Debtor and LLC, and LLC was in neither an agency nor alter-ego relationship with Appellee at the time of the transaction, Appellee was not the initial transferee of the transfer. The bill of sale in this case clearly indicates that the purchaser of Debtor's assets was LLC. (Appellant Br. Ex. B.) The fact that the letter agreement was made between Debtor and Appellee is immaterial; the initial transferee is the party who can be held liable for the conveyance, not the party who initially signed the letter agreement that led to the transfer. (<u>See</u> 11 U.S.C. § 550(a)(1).) Because the bill of sale is explicit as to who purchased the assets, the only way that Appellee can be deemed to have been the initial transferee is if LLC was an alter ego of Appellee or vice versa, or if LLC was acting as Appellee's agent at the time of purchase.

LLC was not an alter ego of Appellee under Michigan law. A corporation[4] is an alter ego of its owner under Michigan law if (1) "the corporate entity [is] a mere instrumentality of another entity or individual," (2) "the corporate entity [is] used to commit a fraud or wrong," and (3) "there [was] an unjust loss or injury to the Plaintiff." Foodland Distribs. v. Al-Naimi, 559 N.W.2d 379, 381 (Mich. Ct. App. 1997). If either entity is an alter ego of the other, then for purposes of this appeal they are the same entity, which would mean Appellee was an initial transferee when LLC became one. First, it is clear that Appellee is not an alter ego of LLC. Appellee was incorporated in 1994, seven years before LLC was created. Also, LLC at no time had any control over Appellee. Second, LLC is not an alter ego of Appellee because it was not a mere instrumentality of Appellee. At the time of the transfer, LLC was wholly owned by Diversified.[5] It is clear that neither is an alter ego of the other, therefore recovery from the Appellee is only possible under the initial transferee rationale if LLC was acting as Appellee's agent.

LLC was not acting as Appellee's agent at the time of purchase. The record shows LLC was a wholly owned subsidiary of Diversified at the time of purchase. (See App. Record No. 4 Ex. D.) The purchase was completed by LLC because Diversified, and not Appellee, wanted the assets. (App. Record No. 10 Ex. 1 at 4:15 - 6:12.) It is clear that LLC was acting as an agent in

---

[4]The entity at issue in this case is a Limited Liability Company and not a corporation. However, the principles of when it is proper to disregard the limited liability of an LLC are the same as for a corporation. Travelers Indem. Co. et al. v. Employers Co., Inc., et al., No. 04-cv-71494, 2006 WL 2457478, at * 8, 2006 U.S. Dist. LEXIS 59461 at *22-23 (E.D. Mich. Aug. 23, 2006) (Steeh, J.).

[5]I make no finding as to whether LLC could have been an alter ego of Diversified because that is irrelevant to this appeal; all that matters is the relationship between Appellant and LLC.

purchasing Debtor's assets, but its principal was Diversified, not Appellee.[6] See, e.g., Hayes v. Emerick, 416 N.W.2d 350, 351 (Mich. Ct. App. 1987) ("An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business ... from another by authority and on account of the latter....") (internal citations omitted).  Because LLC was not acting as Appellee's agent, nor was either LLC or Appellee the alter ego of the other, no recovery can be had from Appellee under the initial transferee rationale.

    *ii.*       *Appellee was not the Entity for Whose Benefit the Transfer was Made*

Appellee was not the entity for whose benefit the transfer was made.  There is little legislative history regarding 11 U.S.C. § 550, and none of it seems to address what is meant by this clause.  In re Connolly North America, LLC, 340 B.R. 829, 834 (Bankr. E.D. Mich. 2006) (Tucker, J.).  Several courts have grappled with this issue, and few theories as to the meaning of this clause have been espoused.  The case most often cited to define this provision comes from the Ninth Circuit.  In re Bullion Reserve of North America, 922 F.2d 544 (9th Cir. 1991).  In that case, the court found Miller, the defendant, was not the entity for whose benefit a transfer was made when a fraudulent conveyance resulted in Miller receiving a loan because the Debtor did not make the fraudulent conveyance with the intent to benefit Miller.  In re Bullion Reserve at 547.  Alternatively, a case from the District of Utah found that the Debtor's intent was irrelevant

---

[6]Appellant argues that LLC was an agent for Appellee because the consideration of the letter agreement, transfer of the assets of Debtor, was contingent upon Appellee meeting its obligations under the letter agreement, namely paying the agreed upon financial obligations. (Appellant Br. 10.)  Appellant further argues Appellee was bound by the letter agreement to purchase the assets.  Id.  Neither of these contractual provisions even if true create an agency relationship, however.  They may lead to a breach of contract action for Appellant against Appellee if it wishes to pursue such an action, but the contract previously agreed to cannot trump the evidence that LLC was wholly owned and acting for Diversified's benefit at the time of the transfer.

to the inquiry under § 550(a)(1).  In re CF & I Fabricators of Utah, Inc., 163 B.R. 858, 877-78 (Bankr. D. Utah 1994) citing In re Robinson Brothers Drilling, Inc., 892 F.2d 850 (10th Cir. 1989) (adopting 97 B.R. 77 (W.D. Okla. 1988)).  There appears to be no binding precedent on this Court, as the only decision within the Sixth Circuit I have found addressing this issue is from the Bankruptcy Court in our District.[7]  In re Connolly North America, LLC, 340 B.R. 829.  This decision adopts the logic of In re Bullion Reserve.  Id. at 834.

I find Judge Tucker's reasoning persuasive, and therefore find Appellee cannot be an entity for whose benefit the transfer was made.  If the statute were meant to permit recovery from a party whom the debtor did not intend to benefit, then the text could say that recovery is permissible from any entity who benefitted from the initial transaction.  It does not say this; it specifically limits recovery to those entities "for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1) (emphasis added).  This language implies an intent requirement, for only the intent of the transferring party can dictate why a transfer was made.  Since there is no indication the conveyance at issue in this appeal was made to benefit Appellee, Appellee cannot be made to disgorge monies under this provision.

Appellant's argument that Debtor intended to benefit Appellee because it thought it was consummating this transaction with an affiliate of Appellee must fail.  A party for whose benefit a transfer is made cannot be the party who is purchasing the assets; such an interpretation leaves

---

[7] Appellant argues this decision is inapplicable to this case because it was a preferential transfer case and not a fraudulent conveyance action.  (Appellant Reply Br. 3-4.)  This is a distinction without a difference; the Court in In re Connolly North America interpreted the meaning of the benefit provision of § 550(a)(1), which is the same provision at issue in this case.  There is no indication given that this provision should have different meanings in preferential transfer cases than in fraudulent conveyance cases, so I properly consider this decision for its interpretation of this provision.

9

no difference between a beneficiary and an initial transferee.[8]  See, e.g., United States v. Menasche, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute...."). Thus any confusion that the Debtor had regarding who was purchasing its assets has no effect on the benefit inquiry.  The classic example of a party who is intended to be benefitted by a transaction is a guarantor or a debtor.  In re Columbia Data Prods., Inc., 892 F.2d 26, 29 (4th Cir. 1989) citing Bonded Fin. Servs., Inc. v. European American Bank, 838 F.2d 890, 895 (7th Cir. 1988).  Appellee is nothing like a guarantor here, nor is there any indication that Debtor intended to benefit it through this transaction; Debtor merely intended to sell its assets to obtain cash for itself.  Therefore, Appellee cannot be found to be a party for whose benefit this transfer was made.

### iii. *Appellee was Neither an Immediate nor a Mediate Transferee of the Initial Transferee*

Neither party argues that Appellee was either an immediate or a mediate transferee of the initial transferee.  Thus, since Appellee does not fall into this category, nor the two previously addressed, no recovery is possible from it under 11 U.S.C. § 550.[9]  No finding as to whether this

---

[8]The money received by Appellee for the sale of its interest in the LLC also cannot be a benefit from the transfer.  Debtor had no interest in Appellee's membership in the LLC, and therefore has no right to claim any consideration that Appellee received in exchange for that membership interest.  See, e.g., In re Faulk, 281 B.R. 15, 18 (Bankr. W.D. Okla. 2002).

[9]Appellant's argument that this Court must find that Appellant can recover from Appellee or the fraudulent conveyance statute is reduced to a nullity is without merit.  Appellant and other trustees in similar situations can recover from any of the entities listed in the statute.  One such entity appears to be present in the facts of this case as well: Diversified.  This case is not about giving meaning to the fraudulent conveyance statute, or even about ensuring that some recovery is possible for bankrupt estates, despite Appellant's several arguments to the contrary.  (See, e.g., Appellant Br. 16 (arguing corporate form should be pierced because "[a] wrong is a wrong").)  It is about whether a trustee can recover from this particular Appellee, and the statutes at issue do not permit such recovery.

transaction constitutes a fraudulent conveyance under 11 U.S.C. § 548 is necessary.

2.  Claim under Michigan Fraudulent Conveyance Law

I AFFIRM Bankruptcy Judge Tucker's decision granting summary judgment to the Appellee under the Michigan Fraudulent Conveyance law as well. Michigan law permits recovery of "the value of the asset transferred" in a fraudulent conveyance from "the first transferee of the asset or the person for whose benefit the transfer was made," or "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Mich. Comp. Laws § 566.38(2). This is substantially the same language as the federal law permitting recovery of fraudulent conveyances. Compare id. to 11 U.S.C. § 550(a). Because there is no authority indicating that the Michigan law should be interpreted differently than the federal law, the text of each provision is substantially similar, and my interpretation of the federal law is a textual one, I interpret the Michigan provision to mean the same thing as the federal provision, and AFFIRM Bankruptcy Judge Tucker's grant of summary judgment on the state law claim.

V.  CONCLUSION

For the above-mentioned reasons, I AFFIRM Bankruptcy Judge Tucker's decision. Each party is responsible for its own costs.

**IT IS SO ORDERED.**

Date:  January 3, 2007                                s/John Feikens
                                               United States District Judge

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on January 3, 2007, by U.S. first class mail or electronic means.
>
> s/Carol Cohron
> Case Manager